IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | Cr. No. 10-00886 HG-1 |
|---|---|---|
| Plaintiff, | ) ) | ORDER DENYING THE GOVERNMENT'S MOTION TO WITHDRAW FROM PLEA AGREEMENT |
| vs. | ) ) ) | |
| RICHARD SILVA, JR., | ) ) | |
| Defendant. | ) ) | |

## ORDER DENYING THE GOVERNMENT'S MOTION TO WITHDRAW FROM PLEA AGREEMENT

Before the Court is the Government's Motion to Withdraw From Plea Agreement. (Doc. # 45.) After careful consideration of the motion, the supporting and opposing memoranda, the supplemental memoranda, and the attached documentation, the Court DENIES the Government's motion because it concludes that the Government orally modified the written plea agreement.

## BACKGROUND

This case stems from a plea agreement entered into by the Government and Defendant Richard Silva, Jr. On December 19, 2010, the Government filed a complaint against Defendant, alleging that Defendant violated 21 U.S.C. §§ 841(a)(1) and 846 by attempting to possess more than 50 grams of methamphetamine with intent to distribute. (Doc. # 1 at 1.) Subsequently,

Defendant and the Government entered into a written plea agreement. (Doc. # 44.) Therein, the Government agreed to dismiss the Sentencing Enhancement Information filed on July 22, 2011, if Defendant pled guilty to attempting to possess with intent to distribute more than fifty grams of methamphetamine. (Id. at 2, ¶ 4.)

In the agreement, Defendant admitted that he sent a box containing methamphetamine from Las Vegas to Hawaii through FedEx. (Id. at 4, ¶ 8.) After FedEx employees deemed the package suspicious, DEA agents tested the package and found that it contained methamphetamine. (Id. at 4-5, ¶ 8.) The DEA substituted sham methamphetamine for the real drugs, and installed a beeper warrant in the package. (Id. at 5, ¶ 8.) When Defendant opened the package, DEA agents arrested him. (Id.)

After being arrested, Defendant told the DEA agents that a male had approached him at the Las Vegas airport on December 6, 2010, and said that he would pay Defendant $500 to receive a package of Christmas presents in Hawaii. (Id. at 5-6, ¶ 8.) Defendant agreed to the proposal and met the male the next day. (Id. at 6, ¶ 8.) The male gave Defendant the $500 and the shipping receipt. Defendant told the DEA agents that he discovered the package possibly contained drugs after opening it. (Id.) The DEA analyzed the contents of the package, and

determined that it contained 1,087 grams of methamphetamine. (Id.)

On October 25, 2011, the Court held a hearing on Defendant's Motion For Withdrawal of Not Guilty Plea and to Plead Anew. (Doc. # 42.) The Court conducted a plea colloquy and advised Defendant of his rights. (Doc. # 54, Ex. 1 at 4-16.) At the hearing, the Court asked the prosecuting attorney to summarize the factual background of the case, and his summary did not materially differ from the plea agreement. (Id. at 17-20.) The Court asked the Defendant to summarize the basis for his plea, and Defendant stated that he did not know the package contained drugs at the time he sent it. (Id. at 21.) He claimed that he discovered that the package contained drugs after opening it. (Id.)

The Court expressed reservations about the plea agreement. Defendant then stated that he knew the package contained drugs from the amount of money he received to mail the package. (Id. at 24.) The Court questioned the Defendant and counsel as follows:

> THE DEFENDANT: I had the intention of delivering drugs.
> THE COURT: Are you sure about that?
> THE DEFENDANT: Right, because of the money he gave me.
> THE COURT: Because of the amount of money.
> THE DEFENDANT: Yeah, but I didn't ask him, but I knew it was.
> THE COURT: Okay. You didn't know the -- you didn't know the type of drug though I take it; is that right?
> THE DEFENDANT: Right, but I knew it was drugs.
> THE COURT: Okay. What do you think?
> MR. MUEHLECK [(Government Counsel)]: I -- I -- as long he

3

understands -- <u>our position is as long he understands it's a controlled substance, and he intends to pass it on with the intent that it be distributed, attempted to possess with intent to distribute, I think that's okay, and doesn't</u> --
MR. BREINER [(Defense Counsel)]: Well, the problem --
MR. MUEHLECK: -- <u>and doesn't contest the amount of the lab report.</u>

(<u>Id.</u> at 25-26) (emphases added.)

Defendant reiterated that he did not know the amount or type of drugs in the package when he sent it, but did not dispute the contents of the package when the Government apprehended him. (<u>Id.</u> at 26-27.) The following exchange then took place:

MR. BREINER: It was seized by Fed Ex, they put the sham drugs in. So the test results we received from Mr. Muehleck we're not contesting that. So the amount, the weight, the purity, the substance.
THE COURT: Yeah.
MR. BREINER: The issue that's going to be difficult for Judge Gillmor, and we'll have to deal with this, assuming that you approve the plea, is sentencing aspect.
THE COURT: Right.
MR. BREINER: His knowledge of what he was receiving. It could be some illegal substance, but there's a vast difference in sentencing between --
THE COURT: Oh, no question about it.
MR. BREINER: -- marijuana, cocaine, and meth.
MR. MUEHLECK: <u>Well, we're -- we're -- we're not there yet, and I think we have to have the defendant agree to this rather than just Mr. Breiner.</u> That's my understanding --
MR. BREINER: Well, I'm not agreeing. That's what I'm trying to get here is that -- that -- this is the problem --
MR. MUEHLECK: Well --
MR. BREINER: -- hold on, Mr. Muehleck, because I'm addressing

4

the --
THE COURT: Okay.
MR. MUEHLECK: -- no --
MR. BREINER: -- I'm addressing the judge. This has been my concern that my client acknowledges he did wrong. He acknowledges that he took money to have something of an illegal nature, an illegal substance sent to Hawaii. I -- I don't know what he knew at the time, whether it was marijuana, or cocaine, or LSD, or crystal methamphetamine.
THE COURT: Yeah, I know -- I already know that. Okay.
MR. MUEHLECK: <u>My -- my question to the Court is I ask the Court to ask the defendant if he agrees the amount of drugs and -- and the lab report results, and he doesn't contest that.</u>
THE COURT: Yeah, okay.
MR. MUEHLECK: And that's what his -- we were --
THE COURT: So is that correct, Mr. Silva, you don't contest the -- the ultimate test results that are -- are indicated in the plea agreement; is that correct?
MR. MUEHLECK: Fifty grams of methamphetamine.
THE DEFENDANT: Right.
THE COURT: <u>Okay. Yeah, yeah, yeah, that's good enough</u>. Okay. So -- and I understand the issues here. It's still not going to be all that easy.
MR. BREINER: Excuse me, Your Honor, I'm sorry the Court's uncomfortable with this. I had the same difficulty, and I'm not trying to create an appealable issue.
THE COURT: Well, I -- I'm not so uncomfortable with what he's saying about what he knew or didn't know what was in the package, but where -- where this was at point of some impasse for me, initially, was whether he knew he was delivering drugs. And -- and I'm satisfied he -- he's indicated in a knowing way that he -- that he did intend to participate in the delivery with the intent to distribute a controlled substance.
MR. BREINER: As to what it was, we'll deal with that at sentencing, I guess.
MR. MUEHLECK: <u>No, as to what it was has got to be on the record today as we understand what it was. That has to be clear. That has to be clear that it's 50 grams or more of methamphetamine.</u>

5

> THE COURT: No, we -- we've already --
> MR. MUEHLECK: Not what Mr. Breiner just said, Your Honor.
> THE COURT: <u>Well, just a second, Mr. Muehleck, he -- he -- he doesn't challenge any of the test results --</u>
> MR. MUEHLECK: Okay.
> THE COURT: <u>-- that are contained -- so -- so he doesn't challenge that what they ultimately found, and right, Mr. Silva, that was ultimately found was pure methamphetamine in the amount indicated, which is more than 50 grams, in the plea agreement; is that right?</u>
> THE DEFENDANT: Right.
> THE COURT: <u>Okay. That doesn't end the question, but -- but --</u>
> MR. MUEHLECK: <u>No, I agree, Your Honor.</u>
> THE COURT: Okay.

(<u>Id.</u> at 27-30) (emphases added.)

The Court subsequently recommended that Defendant's guilty plea be accepted. (<u>Id.</u> at 31-32.)

On November 8, 2011, the Government filed a motion to withdraw from the plea agreement, asserting that paragraphs four and six of the agreement required Defendant to admit the type of drugs in the package. (Doc. # 45 at 2.) Defendant opposed the Government's motion on the grounds that he complied with the terms of the plea agreement. (Doc. # 48 at 3.) The Court requested supplemental briefing on the application of <u>United States v. Hunt</u>, 656 F.3d 906 (9th Cir. 2011), <u>United States v. Thomas</u>, 355 F.3d 1191 (9th Cir. 2004), and other issues related to the motion. (Doc. # 52.) After receiving the supplemental briefs and holding a

6

hearing on January 11, 2012, the Court orally denied the Government's motion to withdraw from the plea agreement.

DISCUSSION

The Government contends that the Defendant breached the plea agreement by failing to plead guilty to possession of methamphetamine. (Doc. # 45 at 2.) The Court concludes that the Defendant did not breach the plea agreement because the Government orally modified the agreement at the plea hearing by indicating that Defendant did not need to admit knowing the type or quantity of drugs at the time he shipped the package.[1]

Plea agreements are contractual in nature, and courts generally apply contract principles when interpreting plea agreements. United States v. Floyd, 1 F.3d 867, 870 (9th Cir. 1993); United States v. Robison, 924 F.2d 612, 613 (6th Cir. 1991). When interpreting the terms of a plea agreement, Courts have concentrated on the reasonable intent of the parties. Floyd, 1 F.3d at 870 (holding that to determine a defendant's obligation under the plea agreement, "a court must determine what the parties reasonably understood to be the terms of the agreement.").

---

[1] The Court has determined that Hunt and Thomas are not relevant to the issue in this case, which is whether Defendant breached the plea agreement.

The Government asserts that paragraphs four and six of the plea agreement required Defendant to plead guilty to a possessing a specific type of drug. Although the Government correctly asserts that the written plea agreement required Defendant to plead guilty to possessing more than 50 grams of methamphetamine (Doc. # 45 Ex. 1 at 2-3 ¶¶ 4, 6), the agreement was modified by the Government at the plea hearing.

Courts have held that a court or government representation can modify the terms of a written plea agreement. For instance, the Ninth Circuit held that a district court's oral representations at a sentencing hearing changed the content of a plea agreement. See United States v. Buchanan, 59 F.3d 914, 917-18 (9th Cir. 1995). In Buchanon, the district court advised the defendant at sentencing that he had a right to appeal the sentence. Id. at 917. However, the defendant waived his right to appeal in the plea agreement. Id. at 916. On appeal, the Ninth Circuit held that the "the district court's oral pronouncement controls and the plea agreement waiver is not enforceable" given "the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object . . . ." Id. at 918. Although the circumstances in Buchanon differ from those in the instant case, Buchanon indicates that the terms of written

8

plea agreement may be altered by the subsequent conduct of the Court and the parties.

Other circuits have held that parties may modify a written plea agreement through their conduct at a subsequent hearing. In <u>United States v. Martin</u>, the Fourth Circuit held that, although the plea agreement did not require the government to move for a downward departure, the government modified the plea agreement by promising to make a substantial assistance motion to reward the defendant for his assistance. 25 F.3d 211, 217 (4th Cir. 1994) ("The government's commitment to make a substantial assistance motion to reward Martin for his presentence substantial assistance was tantamount to and the equivalent of a modification of the plea agreement, albeit an oral one."). The Fourth Circuit held that the government was obligated to move for a downward departure in order to fulfill its promise of rewarding defendant for his cooperation prior to sentencing, because a motion for downward departure was the only way to reward the defendant for his cooperation. <u>Id.</u> <u>Martin</u> indicates that the government can modify a plea agreement by its conduct.

Likewise, in <u>United States v. Wood</u>, the Fourth Circuit held that a written plea agreement barring the defendant from challenging the amount

9

of drugs confiscated was orally modified at the plea hearing. 378 F.3d 342, 349-50 (4th Cir. 2004). Relying on Martin, the court held that "Government statements can modify a plea agreement even after the district court accepts it." Id. at 349. The Fourth Circuit held that the district court's misrepresentation of the agreement and the government's acquiescence to the court's interpretation of the agreement constituted an oral modification of the plea agreement. Id. at 349-50. Thus, courts have held that the government can orally modify a written plea agreement in subsequent hearings.

In this case, the record indicates that the Government and Defendant intended to orally modify the written plea agreement.[2] After Defendant stated that he did not know the type of drugs in the package when he shipped it, the Government stated that "our position is as long he understands it's a controlled substance, and he intends to pass it on with the intent that it be distributed, attempted to possess with intent to distribute, I think that's okay . . . ." (Doc. # 54, Ex. 1 at 25.) The Government also

---

[2] The plea agreement contains a provision stating that "Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty." (Doc. # 45, Ex. 1 at 11 ¶ 17.) However, this provision does not bar modifications to the agreement.

made it clear that Defendant could not contest the amount of drugs found in the lab report.  (Id. at 25-26, 28.)  Defense counsel indicated that Defendant did not challenge the lab results.  (Id. at 27.)  After Defendant met the Government's condition of accepting the lab results, the Court stated that "that's good enough" and later accepted the plea.  (Id. at 29.)  The Government's statements during the plea hearing modified the plea agreement by eliminating any requirement that Defendant know the specific type or quantity of drugs in the package when he shipped it.  Therefore, the Court DENIES the Government's motion to withdraw from the plea agreement because Defendant did not breach the agreement as modified.

DATED:  Honolulu, Hawaii, February 21, 2012.

IT IS SO ORDERED.



 /S/ Barry M. Kurren  
Barry M. Kurren  
United States Magistrate Judge